UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:11-CR-00258-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| vs. | ) | |
| | ) | **ORDER** |
| **DARRYL BOOKER,** | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant's pro se Motion for Compassionate Release. Doc. No. 205. As explained below, Defendant's motion is denied at this time.

I.     BACKGROUND

On July 14, 2011, two undercover agents with the Bureau of Alcohol Tobacco and Firearms (ATF) and a confidential informant met with one of Defendant's co-conspirators ("Co-conspirator One") to discuss and plan a robbery of kilogram quantities of cocaine. Doc. No. 81 at ¶ 1. The undercover agents represented themselves to frequently deliver two kilograms of cocaine on behalf of Columbian drug traffickers. Id. at ¶ 5. The plan was for Co-conspirator One and his associates to rob the Columbian drug traffickers at a residence. Id. at ¶ 6.

During a second meeting, Co-conspirator One told the undercover agents that the robbery victims would be shot in the face and murdered during the robbery. Id. at 10. He warned the undercover agents that they would have blood on their clothing. Id. The undercover agents insisted on meeting Co-conspirator One's associates in advance of the robbery. Id.

Co-conspirator One recruited Defendant and the other co-conspirators to participate in planning and executing the armed robbery. Id. at ¶ 13. On August 4, 2011, Defendant, Co-conspirator One, and the remaining co-conspirators met with the two undercover agents. Id. at ¶

14. During the meeting, Co-Conspirator One explained to Defendant how they would enter the residence and complete the robbery. Id. Defendant asked the undercover agents if he and his associates had to kill the robbery victims. Id. The undercover agents responded that killing the victims was their decision. Id. The planning continued until the undercover agents signaled additional law enforcement to approach and arrest Defendant and his co-conspirators. Id. at ¶ 16. During the arrest, federal agents recovered a .12 gauge shotgun and a .45 caliber pistol. Id.

On December 21, 2011, Defendant pleaded guilty and was convicted of conspiracy to commit Hobbs Act robbery, conspiracy to distribute and possess with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime or crime of violence, conspiracy to use or carry a firearm in furtherance of a drug trafficking crime or crime of violence, and possession of a firearm by a felon. Id. at ¶ 3. Defendant's Final Pre-Sentence Report ("PSR") was issued on August 31, 2012. Id. The PSR lists Defendant's prior convictions, which includes second degree murder, communicating threats, and possession of drug paraphernalia. Id. at ¶¶ 60-75.

Defendant has been in federal custody in connection with the underlying offenses since August 5, 2011, which amounts to 109 months of actual incarceration. After accounting for good conduct time, he has only 45 months remaining on his sentence. On April 12, 2020, Defendant exhausted his required procedures under the statute by submitting a request for compassionate release to the Warden of FCI Fort Dix. Warden Ortiz denied the request, on the basis that Defendant does not meet the BOP's internal conditions for compassionate release. More than 30 days have elapsed since that denial. Accordingly, Defendant appropriately files this pursuant to 18 U.S.C. § 3582(c)(1)(A).

Defendant claims that there are extraordinary and compelling reasons warranting a

reduced sentence because he is at serious risk of life-threatening complications if he contracts COVID-19 due to his hypertension.

**II.     ANALYSIS**

Defendant's request for a sentence reduction is denied because he has not demonstrated "extraordinary and compelling reasons" warranting release. Under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note, his or her motion must be denied.

The Centers for Disease Control and Prevention (CDC) has identified two categories of medical risk factors affecting the likelihood of severe outcomes from COVID-19. First, the CDC presents a list of conditions that, according to current data, definitively entail a greater risk of severe illness. It is the U.S. Department of Justice's position that a risk factor that definitively

entails a greater risk of severe illness qualifies as an "extraordinary and compelling reason" that may warrant compassionate release under Section 3582(c)(1)(A)(i) and Application Note 1(A)(ii)(I) to U.S.S.G. § 1B1.13. The CDC lists hypertension or high blood pressure as a condition which "might" increase the risk of severe illness from COVID-19. Defendant, at age forty-nine, has received medical treatment for hypertension in BOP during his period of imprisonment. Doc. No. 209. On December 16, 2019, Defendant began receiving the prescription drug metoprolol to control his hypertension. Id. at 8-9. On July 8, 2020, a doctor assessed that Defendant's hypertension diagnoses remained current and indicated that Defendant's hypertension was controlled through his use of metoprolol. Id. at 2-3. Defendant's heart was described as having a 'regular rate and rhythm." Id. at 3.

Defendant does not contend that he suffers from a relevant medical condition other than hypertension and the related risk of stroke. Defendant's medical records support the same conclusion. In support of his motion, Defendant described a diagnosis of hyperthyroidism as a condition that "poses challenges, particularly while he is incarcerated." Doc. No. 203 at 7. Defendant does not argue, however, that hyperthyroidism in any way increases the risk for severe illness from COVID-19 and it is not a condition listed as a risk factor by the CDC.

There is no evidence that Defendant's ability "to provide self-care within the environment of a correctional facility" has been "substantially diminished" within the meaning of USSG 1B1.13, cmt. n.1(A). Defendant does not challenge the quality of medical care that he receives at FCI Fort Dix. Defendant bears the burden of establishing that he is uniquely positioned to be so adversely affected by COVD-19 that his release is warranted. He has not met his burden establishing "extraordinary and compelling reason" for a sentence reduction and, therefore, his motion is denied.

4

Case 3:11-cr-00258-MOC-DSC   Document 212   Filed 11/23/20   Page 4 of 6

Defendant's motion is also denied because he has failed to demonstrate that he merits release under the § 3553(a) factors. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). Title 18, United States Code 3553(a) provides, in relevant part, that a sentence should be sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment of the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). Courts have routinely rejected compassionate release motions by defendants with health conditions that "might" increase risk of severe illness from COVID-19 based on the 3553(a) factors.

Considering information in the PSR relating to the factors in § 3142(g), Defendant is a danger to the safety of other persons and the community. The instant offense involved a conspiracy to commit an armed Hobbs Act robbery in order to steal cocaine. Doc. 81 at ¶¶ 5-16. Co- conspirator One spoke to undercover agents of his intent to murder the robbery victims. Id. at ¶ 10. During a meeting to plan the robbery, Defendant asked undercover agents if he and his co- conspirators had to kill the victims. Id. at ¶ 14. Upon arrest, Defendant and his co-conspirators were found in possession of multiple firearms. Id. at ¶ 16. The weight of the evidence against Defendant was strong, and he admitted his guilt. Id. at ¶¶ 3, 5-16; 18 U.S.C. § 3142(g)(2).

Defendant was in possession of a firearm in this offense despite having been sentenced to

fifteen years imprisonment for second degree murder on March 10, 1992. Id. at ¶ 60. Defendant's criminal history also includes prior convictions for communicating threats and possession of drug paraphernalia, in addition to the dangerous offense that has him incarcerated currently. Id. at ¶¶ 62, 64, 70; 18 U.S.C. § 3142(g)(3).

Defendant has only served approximately 111 months of his 180-month sentence. Releasing Defendant after serving around 71.7% of his statutory term sentence (and only 61.6% of his full term), would result in a sentence that failed to reflect the serious nature of this offense, or provide just punishment. 18 U.S.C. § 3553(a)(2)(A). In addition, releasing Defendant would undermine any deterrent effect for this serious offense and for a defendant with multiple convictions for violent offenses. § 3553(a)(2)(B). Finally, granting Defendant's motion would undoubtedly result in an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release, Doc. No. 205, is **DENIED**.

Signed: November 21, 2020

Max O. Cogburn Jr.
United States District Judge